**MID–VALLEY PRODUCE CORP.**
and Probiotic Marketing of
Idaho, Inc., Plaintiffs,

v.

**4–XXX PRODUCT CORP. and Philip (a/k/a "Phil") Melfi, individually and corporately, and Alice Melfi, individually and corporately, Defendants/Third–Party Plaintiffs,**

v.

Herbert O. **CASSIDY** (a/k/a Owen Cassidy) and Harry D. **Ludlum** (a/k/a David Ludlum), Third–Party Defendants.

No. CV 92–0331.

United States District Court,
E.D. New York.

Oct. 13, 1993.

**194**

Mark C.H. Mandell, New York City, for plaintiffs.

Richard A. Miller, Islandia, NY, for defendants/third-party plaintiffs.

John J. McNulty, Riverhead, NY, for third-party defendant Cassidy.

Jakubowski, Robertson & Goldsmith, Hauppauge, NY, for third-party defendant Ludlum.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

WEXLER, District Judge.

Mid Valley Sales Corp., *et al.* ("Plaintiffs") bring this action against the 4–XXX Produce Corp. ("4–XXX"), Philip Melfi, and Alice Melfi ("Defendants") pursuant to the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a *et seq.* to recover payment for $185,012.32 of potatoes sold to 4–XXX by Plaintiffs between March 27, 1991 and September 9, 1991 (hereinafter, "PACA trust

1. Philip Melfi was the president of 4–XXX since June 1991 and in full control of the business

funds"). In an opinion dated April 22, 1993, this Court granted Plaintiffs' motion for summary judgment against 4–XXX and Philip Melfi for the full amount in question.[1] On September 27, 1993, a trial was held regarding the liability of Alice Melfi for the PACA trust funds. At that trial, Plaintiffs attempted to show that moneys which comprised (1) a $250,000 loan, purportedly from 4–XXX to Alice Melfi, and (2) salaries and commissions paid by 4–XXX to Philip Melfi were derived from PACA trust funds and can be traced to a bank account and to a house, both owned by Alice Melfi. Plaintiffs contend that a constructive trust arose upon Alice Melfi's house and bank account as a result of these transactions. The following facts were established at trial:

### FINDINGS OF FACT

1. During the time that Plaintiffs' claims arose, Alice Melfi was the sole stockholder of 4–XXX.

2. During that time, Alice's husband, Philip Melfi, operated and controlled 4–XXX. Alice Melfi took no steps to ascertain whether the corporation was being operated in a responsible manner.

3. Alice Melfi was nominated and elected to the 4–XXX Board of Directors on March 30, 1990. However, Alice Melfi was not at that March 30, 1990 meeting. Indeed, she did not attend any 4–XXX business meeting; she was not aware, until the time of this suit, that she had been elected as an officer of 4–XXX; she never signed any 4–XXX corporate documents; and she performed no work of any kind for 4–XXX.

4. On or about August 31, 1989 a check was issued by 4–XXX to Alice Melfi in the amount of $250,000. This check represented a loan made by Arnold Sachs, the president of 4–XXX at that time, to Philip Melfi.

5. The bulk of the proceeds of that loan was used by Philip Melfi to repay a debt he owed to another corporation that is unrelated to this case.

since at least that date.

6. On or about June 19, 1990, Alice Melfi took out a mortgage on her house and used the proceeds to pay $152,230.22 to 4–XXX in partial repayment of the $250,000 loan. Concurrently, the balance of the $250,000 loan was forgiven by Arnold Sachs.

7. Alice Melfi's house (the Melfi family residence), located at 421D Wading River Manor Road, Manorville, New York, was built by the Melfis prior to the date when the $250,000 loan was made to Alice Melfi.

8. Alice Melfi paid her monthly mortgage payments of approximately $3,200 with approximately $2,800 that she received from her husband's earnings from 4–XXX and with $400 that she receives from a mortgage that she holds on her previous residence in Shirley, New York.

9. In addition to the $2,800 mentioned above, Alice Melfi received a $613 check each week from her husband. This check represented commissions paid to Philip Melfi by 4–XXX. The money was used for living expenses, with any balance placed into Alice Melfi's bank account.

10. For more than eighteen years, until July 30, 1993, Alice Melfi worked as a data transcriber for the IRS, recently earning approximately $26,000 per year.

11. Alice Melfi received and cashed one check, in the amount of $636, from 4–XXX. She does not know why the check was issued to her.

12. Alice Melfi's bank account contains approximately $15,000. This money is derived from salary and commissions paid by 4–XXX to Philip Melfi both before and after 4–XXX was in default to Plaintiffs, earnings from Alice Melfi's job with the IRS, and funds received from the sale of Alice Melfi's Shirley residence. Neither party presented evidence tending to establish what portion of the funds in the bank account is derived from PACA trust funds.

### CONCLUSIONS OF LAW

■ Although the 4–XXX corporate records indicate that Alice Melfi has been an

officer of the corporation since March 30, 1990, this Court finds that her election as an officer was done without her knowledge or consent and is therefore void. Moreover, although Alice Melfi has been the sole stockholder of 4–XXX during the period at issue, mere ownership, in and of itself, is not sufficient to make Alice Melfi a PACA trustee.[2] Therefore, Plaintiffs will only be able to reach Alice Melfi's assets to the extent that it can be shown that such assets can be traced to PACA trust funds and were received without consideration.

■ As to the $250,000 loan, this Court finds that the actual source of the money was Arnold Sachs, not 4–XXX trust funds. Moreover, the Court finds that the loan was repaid in part and forgiven in part so that no balance is owed to 4–XXX. Furthermore, all transactions related to this loan took place prior to March 1991 when the trust funds at issue here arose. Indeed, in 1989 and 1990 when these loan transactions took place, it appears that 4–XXX was solvent. Finally, it is clear that no part of the $250,000 was used to build or pay any expenses for Alice Melfi's residence, nor did the proceeds of the loan remain in Alice Melfi's bank account for more than a brief period. Accordingly, Plaintiffs have no claim against Alice Melfi's house or against her bank account as a result of the $250,000 loan.

■ Neither Plaintiffs nor Defendants has submitted any evidence as to what portion of the moneys in Alice Melfi's bank account can be traced to PACA trust funds. Both parties contend that the opposing party had the burden of proof as to this critical issue. Plaintiffs rely on *Sanzone–Palmisano Co. v. M. Seaman Enterprises*, 986 F.2d 1010 (6th Cir.1993) for the proposition that defendants in PACA actions have the burden to show that disputed assets were not acquired with proceeds from the sale of produce. In *Sanzone*, the Sixth Circuit held that a PACA debtor, a company that owned six retail grocery stores and commingled PACA trust funds with other funds, had just such a bur-

---

**2.** Pursuant to 7 U.S.C. § 499e(a), PACA trustees are "merchants, dealers or brokers." Alice Melfi appears to be a "responsibly connected" party rather than a merchant, dealer or broker. *See* 7 U.S.C. §§ 499a(b)(5), (6), (7) and (9).

den. *Sanzone* relied on the following legislative history to PACA:

> The trust impressed by section 5(c)(2) is a nonsegregated "floating trust" made up of all of *a firm's* commodity related liquid assets, under which there may be a commingling of trust assets. Under this provision there is no necessity to specifically identify all of the trust assets through each step of the assets accrual and disposal process. Since commingling is contemplated, all trust assets would be subject to the claims of unpaid seller-suppliers and agents to the extent of the amount owed them.

*Id.* at 1013 (emphasis added) (quoting H.R.Rep. No. 98–543, 98th Cong., 1st Sess. 5 (1983)). The *Sanzone* court went on to conclude that there is "no reason to shift the tracing burden to the produce supplier when *the purchaser* commingles produce proceeds with the proceeds from the sale of other commodities." *Id.* (emphasis added).

It is understandable that Congress would have wanted a wrongdoer—a PACA trustee who breached its trust to the farmers—to bear the burden of tracing funds that it commingled. In the instant case, however, the Court finds that Alice Melfi is neither a trustee nor a wrongdoer (the Court fully accepts her testimony to the effect that she had no knowledge of any business affairs of 4–XXX until February 1992 when Plaintiffs commenced this suit), but a third party (albeit the 100% stockholder of 4–XXX) who merely received PACA trust funds, in good faith, from her husband and who used such funds, in good faith, to pay her mortgage and to augment, to some unknown, and probably minor degree, her fairly modest savings account. Under these facts, this Court finds that Plaintiffs have the burden to show what portion of the commingled moneys was derived from PACA trust funds. *Cf. Goldberg v. New Jersey Lawyers' Fund*, 932 F.2d 273, 280 (3rd Cir.1991) ("In order to establish rights as a trust recipient, a claimant must ... identify and trace the trust funds if they are commingled."); *In re Mahan & Rowsey*, 817 F.2d 682, 684 (10th Cir.1987) (same).

Because Plaintiffs have failed to present any evidence as to what portion of the money in Alice Melfi's bank account can be traced to PACA trust funds, Plaintiffs are not entitled to receive any money from that source.

■ However, Plaintiffs established that Alice Melfi used $2,800 a month in 4–XXX PACA trust funds to pay the mortgage on her house. Clearly, Plaintiffs have no claim to any such payments before March 27, 1991, the date on which they first sold the potatoes to 4–XXX for which they have not been paid. Therefore, the Court finds that as of April 1991, Alice Melfi began using 4–XXX PACA trust funds to pay $2,800 of her monthly mortgage payments.

At a deposition before trial, Philip Melfi testified that 4–XXX stopped doing business in February or March of 1992 and that he drew salary and commissions up to that date. *See* Deposition of Philip Melfi taken November 4, 1992 at pp. 7, 19, 81–82. Although it is not absolutely clear that Alice Melfi continued to receive the full $2,800 per month in 4–XXX PACA trust funds from her husband through February 1992 for her mortgage payments, the preponderance of the evidence supports that contention. Therefore, this Court finds that for eleven months, between April 1991 and February 1992, Alice Melfi paid the mortgage on her house with 4–XXX PACA trust proceeds, totalling $30,800.

## CONCLUSION

Accordingly, under these facts, a constructive trust has arisen on Alice Melfi's house located at 421D Wading River Manor Road to the extent of $30,800 and Plaintiffs are entitled to a lien on the house in that amount.

SO ORDERED.