**SANZONE–PALMISANO COMPANY,**
Plaintiff–Appellant,

v.

**M. SEAMAN ENTERPRISES, INC., et al., Defendants,**

**Malone & Hyde, Inc., Defendant–Appellee.**

No. 92–3335.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 20, 1993.

Decided Feb. 25, 1993.

Rehearing and Rehearing En Banc Denied April 16, 1993.

Stephen P. McCarron (argued and briefed), Silver Spring, MD, Thomas E. Donnellon, Donnellon, Donnellon & Miller, Cincinnati, OH, Steven A. Rafkin, McCarron, Becker & Kahan, Silver Spring, MD, for plaintiff-appellant.

Edward S. Dorsey (argued and briefed), Lindhorst & Dreidame, Cincinnati, OH, for defendant-appellee.

Before: KEITH and BOGGS, Circuit Judges; and GIBBONS, District Judge.*

BOGGS, Circuit Judge.

Plaintiff Sanzone–Palmisano Co. appeals a summary judgment in its favor for less than it sought in an action to recover for

---

* The Honorable Julia S. Gibbons, United States District Judge for the Western District of Tennessee, sitting by designation.

unpaid produce under the 1984 Amendments to the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499e. We remand the claim to the district court for proceedings consistent with this opinion.

## I

In April 1990, defendant M. Seaman Enterprises, Inc. ("Seaman") bought six grocery stores in the Dayton, Ohio area, which were doing business as "Stump's Markets." The purchase was financed by a loan of approximately $2.5 million from defendant Malone and Hyde ("M & H"), which in turn took a security interest in Seaman's assets as collateral for the loan.

Seaman quickly found itself in financial trouble, and M & H foreclosed on its security interest on November 21, 1990. M & H took over Seaman's assets and operations. The assets included inventory valued at $782,460.69 and cash register receipts from the sale of produce and other inventory on November 21, 1990, totalling $91,369.05. M & H operated the stores until early January 1991, when M & H sold the stores to a third party. M & H lost approximately $275,000 on the entire transaction.

Plaintiff Sanzone–Palmisano ("Palmisano") is a produce supplier who, between October 15, 1990 and November 21, 1990, sold produce to Seaman worth $104,491.15, for which it has never been paid. After the takeover, Palmisano filed a timely complaint[1] against Seaman and M & H to enforce payment of the money under PACA. Palmisano moved for summary judgment against M & H on the ground that M & H took control of PACA trust assets belonging to Palmisano in the amount of $104,491.15 when it took possession of Seaman's assets, which included all produce-related assets. M & H admitted possession of PACA assets in the amount of $20,503.84, but denied further liability.

The magistrate judge recommended that Palmisano's motion for summary judgment

be granted for the balance of $20,503.84. The magistrate judge found that the primary question was what portion of the Seaman assets seized by M & H on November 21, 1990 were subject to the PACA trust. The parties stipulated that the produce portion of the $782,460.69 of inventory seized by M & H had a wholesale value of $15,451.13. Since the cash register tapes for November 21, 1990 were unavailable, the magistrate judge computed the portion of the $91,369.05 of cash receipts that were proceeds from the sale of produce by reference to the percentage of total sales in the four weeks following M & H's takeover that were produce-related. The magistrate judge found that 5.53% of M & H's proceeds were from the sale of produce. Therefore, the magistrate judge found that $5,052.71 (5.53% of $91,369.05) of the cash receipts for November 21, 1990 were from the sale of produce. The magistrate judge concluded that the total value of the PACA trust assets seized by M & H was $20,503.84 ($5,052.71 + $15,451.13) and awarded Palmisano prejudgment interest.

Palmisano claimed that it was entitled to an additional $83,987.31 from the remaining assets seized. The magistrate judge accepted Palmisano's argument that when a retailer commingles produce proceeds with proceeds from other inventory in a single fund, as Seaman did, and then uses that fund to purchase other inventory, that inventory and subsequent proceeds become part of the trust *res*. However, the magistrate judge rejected Palmisano's contention that it was not required to show the specific remaining assets that were purchased with funds from the sale of produce. Instead, the magistrate judge placed the burden of tracing the use of produce assets on Palmisano and found that Palmisano had failed to carry its burden of proof.

The district court adopted the magistrate judge's report, granted Palmisano's summary judgment in part, and, pursuant to

---

**1.** Section 5(c)(3) of PACA requires that an unpaid seller provide written notice of his intent to preserve the benefits of the trust to the buyer and file notice with the Secretary of Agriculture within thirty days after payment for the produce was due. 7 U.S.C. § 499e(c)(3); 7 C.F.R. § 46.46(g).

Federal Rule of Civil Procedure 54(b), directed the entry of a final judgment against M & H in favor of Palmisano for $20,503.84 plus interest and costs.[2]

## II

PACA creates a statutory trust for unpaid sellers of perishable agricultural commodities. PACA provides that:

> Perishable agricultural commodities ... and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers ... until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

7 U.S.C. § 499e(c)(2). The legislative history to the 1984 amendments explains the need to protect produce suppliers:

> Sellers of agricultural commodities are often located thousands of miles from their customers. Sales transactions must be made quickly or they are not made at all.... Under such conditions, it is often difficult to make credit checks, conditional sales agreements, and take other traditional safeguards.
>
> ....
>
> Many [buyers], in the ordinary course of their business transactions, operate on bank loans secured by [their] inventories, proceeds or assigned receivables from sales of perishable agricultural commodities, giving the lender a secured position in the case of insolvency. Under present law, sellers of fresh fruits and vegetables are unsecured creditors and receive little protection in any suit for recovery of damages where a buyer failed to make payment as required by the contract.

H.R.Rep. No. 98–543, 98th Cong., 1st Sess. 3 (1983).

Under PACA, sellers of produce are protected. A produce buyer's unpaid obligation "becomes a trust obligation ..., prior to and superior to any lien or security interest in inventory held by the [buyer's] secured lender." *In re Prange Foods, Corp.*, 63 B.R. 211, 214 (Bankr.W.D.Mich. 1986).

## III

We review *de novo* the district court's partial grant of Palmisano's motion for summary judgment. *Baggs v. Eagle–Picher Industries, Inc.*, 957 F.2d 268, 271 (6th Cir.1992). M & H concedes that it has a trust obligation to Palmisano and that Palmisano provided proper notice of its trust claim. M & H further concedes that Palmisano is entitled to the $20,503.84 that the district court calculated to be the value of the produce inventory and the direct cash proceeds from produce sales on November 21, 1990. Therefore, the issue before the court is a narrow one: Whether Palmisano, as the trust beneficiary, has the burden of proving the specific remaining assets that were acquired by Seaman with funds from the sale of trust assets? It is well settled, and M & H concedes, that the trust is a "floating" trust in that it applies to all of the buyer's produce in inventory and all proceeds from the sale of produce and that therefore the trust beneficiary is not obligated to distinguish the assets to which its trust applies from other produce-related assets. In other words, the trust beneficiary need not prove that it, and not another produce supplier, was the source of the produce or produce-related assets. *In re W.L. Bradley Co.*, 75 B.R. 505, 509 (Bankr. E.D.Pa.1987); *see also In re Atlantic Tropical Market Corp.*, 118 B.R. 139, 142 (Bankr.S.D.Fla.1990); *In re Richmond Produce Co.*, 112 B.R. 364, 368 (Bankr. N.D.Cal.1990) ("The unpaid sellers are not required to trace, and the trust arises im-

---

**2.** The procedural status of this case is unclear. Since M & H never moved for summary judgment on the claim for the remaining $83,987.31, this claim is technically still before the district court, awaiting trial. However, there have been no further proceedings on this claim below, and, on appeal, both parties appear to have interpreted the district court's order as a final disposition of the claim. For the sake of judicial efficiency, we disregard this procedural error and treat the district court's order as a final disposition of Palmisano's claim against M & H.

mediately upon delivery."); *In re Fresh Approach*, 51 B.R. 412, 422 (Bankr. N.D.Tex.1985) ("The legislative history emphasizes that no specific tracing of inventory or proceeds is required (nor, as a practical matter, could such tracing be accomplished).").

■ Therefore, when a buyer sells only produce, and all of its profits are thus derived from the sale of produce, the case is simple. The produce supplier need only file a timely complaint and prove the amount of unpaid produce. Then, the produce supplier is entitled to a portion of the produce buyer's inventory and produce-related assets equal to what the supplier is owed. However, when the buyer sells other commodities in addition to produce and commingles the proceeds from the sale of all commodities, the case is more complicated and the ramifications are greater. Palmisano contends that such cases are no different than cases involving buyers who deal exclusively in produce. According to Palmisano, the trust beneficiary still has no obligation to prove the specific assets that were acquired with the proceeds from the sale of produce, and thus the trust beneficiary is entitled to a portion of the entire commingled fund equal to what it is owed. M & H contends, and the district court agreed, that the beneficiary must prove the specific assets that were purchased with the proceeds from the sale of *any* produce, although the beneficiary need not prove that it was the specific source of such produce.

We recognize that the ramifications of enforcing the trust obligation are greater when a purchaser of produce sells commodities other than produce. Retail grocers commonly commingle the proceeds from the sale of produce with the proceeds from the sale of all other commodities. Like the produce suppliers, the suppliers of these other commodities are normally unsecured creditors. Without the protection of PACA, produce suppliers would share ratably with all other suppliers the funds remaining after the satisfaction of the secured creditors, other priority claims, and administrative costs. With the protection

of PACA, however, the produce suppliers' claims are satisfied first, and the remaining unsecured creditors are left to share the substantially reduced amount left after satisfaction of other priority claims. *See In re D.K.M.B., Inc.*, 95 B.R. 774, 776 (Bankr. D.Col.1989) (expressing concern over the "harsh effect" of the application of the PACA trust in this context).

Although this outcome may be characterized by some as harsh, it is the outcome that Congress intended. The legislative history confirms what the language of the statute requires:

> The trust impressed by section 5(c)(2) is a nonsegregated "floating trust" made up of all a firm's commodity related liquid assets, under which there may be a commingling of trust assets. Under this provision there is no necessity to specifically identify all of the trust assets through each step of the assets accrual and disposal process. Since commingling is contemplated, all trust assets would be subject to the claims of unpaid seller-suppliers and agents to the extent of the amount owed them.

H.R.Rep. No. 98–543 at 5. Congress enacted the 1984 Amendments to protect what it determined to be an especially vulnerable class. Courts have recognized this purpose and consistently placed the burden of tracing on the purchaser in cases where the purchaser deals exclusively in produce. *See, e.g., In re Atlantic Tropical Market Corp.*, 118 B.R. at 142. Also, at least one circuit court has placed the tracing burden on the purchaser or PACA debtor when the purchaser commingled produce proceeds with proceeds from the sale of other commodities. *Six L's Packing Co. v. West Des Moines State Bank*, 967 F.2d 256, 258 (8th Cir.1992).

We see no reason to shift the tracing burden to the produce supplier when the purchaser commingles produce proceeds with the proceeds from the sale of other commodities. The harsh effect on other suppliers is not persuasive. Although the PACA trust may not adversely affect suppliers of non-produce commodities when the purchaser deals exclusively in produce,

other unsecured creditors—and even secured creditors—must still suffer the "harsh effect" of the produce suppliers being elevated from the status of unsecured creditors to trust beneficiaries.

We hold that a purchaser, or PACA debtor, has the burden of showing that disputed assets were not acquired with proceeds from the sale of produce or produce-related assets. This holding is consistent with PACA's statutory language, the legislative history, and past court decisions interpreting PACA. We recognize that in most cases it will be virtually impossible for a PACA debtor to trace the origin of the disputed assets. *See In re Gotham Provision Company, Inc.,* 669 F.2d 1000, 1011 (5th Cir.) (discussing the impossibility of tracing assets under similar trust provisions of the Packers and Stockyards Act), *cert. denied,* 459 U.S. 858, 103 S.Ct. 129, 74 L.Ed.2d 111 (1982); *In re Fresh Approach,* 51 B.R. at 422. Certainly, there could be situations where it can be shown that the produce in question did not produce assets in inventory sufficient to meet the supplier's claim. For example, the produce could have rotted in inventory or could have sold for a loss, or the proceeds could have been segregated and gambled away. However, in the conventional case, where the produce was sold at a gross profit, the proceeds were commingled in a general fund, and the general fund was used to buy more inventory, the PACA debtor will be unable to meet its burden, and the produce supplier will prevail. We believe that this is the outcome that Congress intended.

## IV

For the foregoing reasons we REMAND Palmisano's claim against M & H to the district court for proceedings consistent with this opinion. We accept the district court's finding that Palmisano sold to Stump's Markets produce worth $104,491.15. On remand, the burden will be on M & H to prove which seized assets were not purchased with funds from the sale of produce. All of the seized assets that cannot be traced to a non-trust source are part of the trust *res* and are subject to Palmisano's trust claim of $104,491.15.