In re KORNBLUM & CO., INC., Debtor.

TOM LANGE COMPANY, INC.,
and Scott Finks Co., Inc.,
Plaintiffs–Appellants,

v.

KORNBLUM & CO., INC.,
Defendant–Appellee.

Bankruptcy No. 91 B 15470 (FGC).
Adv. No. 92–9091A.
No. 93 Civ. 6429 (JES).

United States District Court,
S.D. New York.

Jan. 31, 1995.

McCarron & Associates (Stephen P. McCarron, of counsel), Washington, DC, for plaintiffs-appellants.

Robert P. Herzog, New York City, for defendant-appellee.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Appellants Tom Lange Co., Inc. ("Lange") and Scott Finks Co., Inc. ("Finks") appeal from an order of the United States Bankruptcy Court for the Southern District of New York (Conrad, B.J.). The order, dated August 1, 1993, held, *inter alia*, that certain assets were not subject to a statutory trust under the Perishable Agricultural Commodities Act ("PACA"), as amended, 7 U.S.C. § 499a, *et seq.* For the reasons that follow, the order appealed from is affirmed, as modified.

## BACKGROUND

At all times pertinent to this action, Kornblum & Co., Inc. ("Kornblum") was a licensed dealer and/or commission merchant of perishable agricultural commodities at the Hunts Point Terminal Market in New York City ("the City"). *See* Joint Statement of Undisputed Facts ("Joint St.") ¶ 2. As of March 16, 1981, Kornblum had entered into a lease with the City covering store units 362 through 365 and accompanying office units 362A, 363A, 364A, 365A, 363B and 364B (collectively "the Units"). *Id.* ¶ 4. The lease covered a term of nine years, commencing on April 1, 1981 and ending on March 31, 1990. *Id.* In or about May 1986, the City granted the Hunts Point Terminal Cooperative Association, Inc. ("the Co–Op Association") a master lease covering the Bronx Terminal Market. *Id.* ¶ 5. The master lease covered a term of twenty-five years and included two ten-year renewal options. *Id.*

Under the master lease, an existing tenant could surrender its existing lease and purchase an interest in the Co–Op Association. Joint St. ¶ 5. Upon joining the Co–Op Association, a member was entitled to execute a leasehold, similar to the twenty-five year term with renewal options under the master lease. *Id.* Accordingly, in May 1986, Kornblum purchased four membership certificates and accompanying proprietary leases covering the Units, at a total cost of $32,000. *Id.* On May 22, 1991, however, Kornblum sold store unit 365 and office unit 363 for the sum of $160,000.[1] *Id.* ¶ 6. In or about June 1991, Kornblum received a revised set of membership certificates and proprietary leases covering the remaining three store units and the applicable office units. *Id.* ¶ 7. A member is also required to pay a monthly maintenance fee, which was fixed at $1,050 per Unit as of June 7, 1993. *Id.* ¶ 5.

At all times pertinent to this action, Lange and Finks were licensed dealers and/or commission merchants of produce under PACA. Joint St. ¶ 11. Between June 30, 1989 and July 28, 1989, Lange sold Kornblum seven produce shipments totalling approximately $66,456.77. *Id.* ¶ 12. On August 14, 1989, Lange filed written notice with the United States Department of Agriculture and with Kornblum in order to preserve its benefits under PACA. *See* 7 U.S.C. § 499e(c)(3); Joint St. Exh. 1. Between May 8, 1991 and June 11, 1991, Finks sold Kornblum four produce shipments totaling approximately $40,440.00. Joint St. ¶ 13, Exh. 1. On June 14, 1991 and July 17, 1991, Finks also filed written notices in order to preserve its benefits under PACA. *See* 7 U.S.C. § 499e(c)(3); Joint St. Exh. 1. On February 18, 1992, the United States Department of Agriculture ("U.S.D.A.") provided the trustee with a list of creditors and the amounts qualified pursuant to 7 U.S.C. § 499e(c). *Id.* ¶ 16, Exh. 1.

On December 2, 1991, Kornblum filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C § 701, *et seq.* Joint St. ¶ 1. Thereafter, the trustee of the bankruptcy estate, Jeffrey L. Sapir, Esq., contracted to sell the remaining three Units for the sum of $310,-000.[2] *Id.* ¶ 3, 9. On May 18, 1992, Lange and Finks (collectively "appellants") commenced an adversary proceeding in the Unit-

---

**1.** By the terms of the sale, Kornblum received $60,000 upon closing and a promissory note for $100,000. Joint St. ¶ 6. The promissory note is payable in sixty equal monthly installments of $2,051.65, including interest. *Id.*

**2.** By the terms of the sale, the trustee would receive $50,000 upon closing, and $260,000 in twelve equal monthly installments of $2,886.60, including interest. Joint St. ¶ 9. On the first day of the thirteenth month after closing, the trustee would receive the remaining unpaid balance. *Id.*

ed States Bankruptcy Court for the Southern District of New York against Kornblum, seeking to include the anticipated sale proceeds within the PACA trust fund. However, appellants did not name the trustee as a defendant in the adversary proceeding.

On or about June 7, 1993, appellants filed a motion for summary judgment. On or about June 29, 1993, the trustee filed a cross-motion for summary judgment. On August 4, 1993, the bankruptcy court held that the trustee was the real party in interest, and that the procedurally improper adversary complaint should be dismissed. *See* Order of the Bankruptcy Court dated August 4, 1994. In addition, the court held that "no PACA diversion occurred because the debtor did not exchange any money for the debtor's leases, except the payment of rental made in the ordinary course of its business." *Id.* In the end, the court granted judgment in favor of the trustee, rather than Kornblum. *Id.*

On September 15, 1993, appellants filed the instant appeal. As in the court below, the trustee contends that the adversary complaint should be dismissed for failure to name the real party in interest, and that the anticipated sale proceeds are not subject to the PACA trust. Moreover, for the first time, the trustee argues that the bankruptcy court lacked subject matter jurisdiction over the adversary proceeding. As in the court below, appellants contend that the anticipated sale proceeds are subject to the PACA trust. In addition, appellants assert that the bankruptcy court effectively joined the trustee in the instant action by permitting him to participate, and then granting judgment in his favor.

## DISCUSSION

█ The Court possesses jurisdiction over the instant appeal pursuant to 28 U.S.C. § 158(a), and the applicable standards of review are well-established. The district court is bound by findings of fact announced by the bankruptcy court, unless those findings are clearly erroneous. *See In re Brody,* 3 F.3d 35, 38 (2d Cir.1993). The district court, however, must conduct a *de novo* review of the

conclusions of law announced by the bankruptcy court. *See In re Maxwell Newspapers, Inc.,* 981 F.2d 85, 89 (2d Cir.1992).

## I. SUBJECT MATTER JURISDICTION

█ At the outset, the Court rejects the trustee's argument that the bankruptcy court lacked subject matter jurisdiction over the instant action. Pursuant to 28 U.S.C. § 1334, federal district courts possess original jurisdiction over all cases arising under the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333 (1984). Pursuant to 28 U.S.C. § 157(a), the Southern District has referred all such cases to the United States Bankruptcy Court for the Southern District of New York. The instant adversary proceeding, which will clearly affect the liquidation of estate assets, is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). *See In re Lombardo Fruit & Produce,* 106 B.R. 593, 595 (Bankr.E.D.Mo.1989), *aff'd,* 12 F.3d 110 (8th Cir.1993); *In re Fresh Approach, Inc.,* 51 B.R. 412, 417–18 (Bankr.N.D.Tex.1985). Therefore, the bankruptcy court possessed subject matter jurisdiction over the instant action and was fully empowered to enter judgment in relation thereto. *See Lombardo,* 106 B.R. at 595; *In re Milton Poulos, Inc.,* 94 B.R. 648, 651–52 (Bankr.C.D.Cal. 1988), *aff'd,* 107 B.R. 715 (9th Cir.1989); *In the Matter of United Fruit & Produce Co.,* 86 B.R. 14, 16 (Bankr.D.Conn.1988); *Fresh Approach,* 51 B.R. at 417–18; *see also In re Gotham Provision Co.,* 669 F.2d 1000, 1011 (5th Cir.), *cert. denied,* 459 U.S. 858, 103 S.Ct. 129, 74 L.Ed.2d 111 (1982) (case under analogous Packers & Stockyards Act, 7 U.S.C. § 181 *et seq.*); *but cf. In re Tanner,* 77 B.R. 897, 898–99 (Bankr.N.D.Ala.1987).

## II. FAILURE TO JOIN AN INDISPENSABLE PARTY

█ The bankruptcy court correctly concluded that the trustee is a necessary party to this action. The trustee clearly possesses an interest in the Units and any disposition in his absence would impair his ability to protect that interest.[3] *See* Fed R.Bankr.P.

---

**3.** Under Bankruptcy Rule 7019, which incorpo-

rates Rule 19 of the Federal Rules of Civil Proce-

7019; *see also Bellini Imports v. Mason & Dixon Lines, Inc.*, 944 F.2d 199, 201–02 (4th Cir.1991). While appellants contend that the Units do not constitute property of the estate, the trustee must be afforded an opportunity to refute that assertion. *See In re DiBona*, 7 B.R. 798, 800 (Bankr.E.D.Pa. 1980). Moreover, even though the debtor has been included as a named defendant, the trustee must still be afforded the opportunity to respond on behalf of the estate. *See In re Winebrenner*, 170 B.R. 878, 881–82 (Bankr. E.D.Va.1994); *DiBona*, 7 B.R. at 800.

■ Where, as in this case, a necessary party was not initially joined, the bankruptcy court must join the party in the action unless joinder would deprive the court of jurisdiction. *See* Fed.R.Bankr.P. 7019; *In re Trans-leisure Corp.*, 41 B.R. 201, 204 (Bankr. E.D.N.Y.1984); *DiBona*, 7 B.R. at 801. Moreover, because non-joinder is not ordinarily a ground for dismissal, the bankruptcy court may join the party at any stage of an action. *See* Fed.R.Bankr.P. 7021; *In re Hudik–Ross Co.*, 198 F.Supp. 695, 697 (S.D.N.Y.), *aff'd sub nom.*, *In re S.O.S. Sheet Metal Co.*, 297 F.2d 32 (2d Cir.1961); *DiBona*, 7 B.R. at 801. Although the bankruptcy court did not issue a formal order joining the trustee, the court repeatedly permitted the trustee to appear in this action, and then directed judgment in his favor. Thus, as reflected by the record below, the bankruptcy court effectively joined the trustee as required by the bankruptcy rules.

In any event, even if the trustee was not effectively joined as noted above, the bankruptcy court was not required to dismiss the instant action upon this ground. Rather, the bankruptcy court could have permitted appellants to amend their complaint in order to correct this technical defect. *See In re James*, 112 B.R. 687, 696–97 (Bankr.E.D.Pa. 1990).

---

dure by reference, a party is necessary
  if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter

## III. SCOPE OF THE PACA TRUST

■ In this case of first impression, appellants argue that previously acquired assets, such as the Units, are subject to a subsequently created PACA trust. In the alternative, appellants argue that the monthly maintenance payments formed a constructive trust over the entire Units, or at least in the amount of such payments. For the reasons that follow, the Court cannot accept these arguments.

In 1930, Congress enacted PACA in order to regulate the marketing of perishable agricultural commodities and to otherwise suppress unfair business practices. *See Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154, 155–56 (11th Cir.1990). In the early 1980s, Congress determined that the financial stability of produce sellers was being undermined by the borrowing practices of produce dealers:

> Sellers of agricultural commodities are often located thousands of miles from their customers. Sales transactions must be made quickly or they are not made at all. . . . Under such conditions, it is often difficult to make credit checks, conditional sales agreements, and take other traditional safeguards.
>
> . . . .
>
> Many [dealers], in the ordinary course of their business transactions, operate on bank loans secured by [their] inventories, proceeds or assigned receivables from sales of perishable agricultural commodities, giving the lender a secured position in the case of insolvency. Under present law, sellers of fresh fruits and vegetables are unsecured creditors and receive little protection in any suit for recovery of damages where a buyer has failed to make payment as required by the contract.

*See In re W.L. Bradley Co.*, 75 B.R. 505, 509 (Bankr.E.D.Pa.1987) (citing H.R. No. 98–543, 98th Cong., 2nd Sess. 3 (1983), 1984 U.S.C.C.A.N. 405–07). In 1984, Congress re-

---

  impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reasons of the claimed interest.

Fed.R.Bankr.P. 7019.

sponded by amending PACA to establish a non-segregated statutory trust under which a produce dealer holds its produce-related assets as a fiduciary until the produce seller is fully paid. See In re Davis Distributors, Inc., 861 F.2d 416, 417 (4th Cir.1988).

By operation of law, a PACA trust arises in favor of an unpaid seller upon the delivery of unpaid produce to a produce dealer. See In re San Joaquin Food Service, Inc., 958 F.2d 938, 939 (9th Cir.1992) (quoting In re Milton Poulos, Inc., 947 F.2d 1351, 1352 (9th Cir.1991)). The corpus of a PACA trust is comprised of perishable agricultural commodities

> received ... in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such ... merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

7 U.S.C. § 499e(c)(2) (emphasis added); see also 7 C.F.R. § 46.46. As a result of the non-segregated and "floating" nature of a PACA trust, a produce seller need not perform any tracing or otherwise demonstrate that its funds were employed to obtain a particular asset. See Sanzone–Palmisano Co. v. M. Seaman Enterprises, 986 F.2d 1010, 1012–14 (6th Cir.1993). Rather, the produce dealer bears the burden of demonstrating that an asset was not acquired with the proceeds from the sale of particular produce, or from the sale of a particular produce-related asset. See Sanzone–Palmisano, 986 F.2d at 1014; Fresh Approach, 51 B.R. at 422; Milton Poulos, 94 B.R. at 652–53.

In this case, the Units were acquired in May 1986, approximately three years prior to Lange becoming a qualified claimant and approximately five years prior to Finks becoming a qualified claimant. Joint St. ¶ 5, Exh. 1. Indeed, based upon the record before the Court, it appears that no PACA trust could have existed prior to June 1989, when Lange delivered unpaid produce to Kornblum. Joint St. Exh. 1. It follows that the trustee has satisfactorily demonstrated that the acquisition of the Units is completely unrelated to any qualified transactions between Kornblum and appellants, or any qualified transactions between Kornblum and any produce sellers subsequent to May 1986. The Court therefore holds that appellants are not entitled to PACA trust protection over the Units. See, e.g., Six L's Packing Co. v. West Des Moines State Bank, 967 F.2d 256, 257–58 (8th Cir.1992) (holding that unpaid seller not entitled to assets acquired prior to qualified transaction).

Moreover, the fact that monthly maintenance payments were made by appellants does not compel a different result. As determined by the bankruptcy court, the monthly maintenance payments were made in the ordinary course of business and were not employed to acquire the Units. According to established principles of trust law and case law under PACA, an unpaid produce seller cannot trace diverted funds to a bona fide purchaser paid in the ordinary course of business, especially when, as here, they are in essence the functional equivalent of rent. See In re Al Nagelberg & Co., 84 B.R. 19, 21–22 (Bankr.S.D.N.Y.1988); Tanner, 77 B.R. at 900–01.

There are substantial policy reasons supporting this conclusion. To apply PACA trusts to pre-existing financial arrangements such as those present here would jeopardize all such arrangements. As a practical matter, produce dealers would be effectively precluded from obtaining secured loans on warehouse equipment, furniture, trucks and any other real or personal property. Indeed, as the available legislative history strongly suggests, Congress did not intend to burden the lending institutions and their relationships with produce dealers in this manner. See In re Monterey House, Inc., 71 B.R. 244, 246 (Bankr.S.D.Tex.1986) (citing H.R.Rep. No. 98–543, 98th Cong., 2nd Sess. 4 (1983), 1984 U.S.C.C.A.N. 405, 407).

Nor does In re Atlantic Tropical Market Corp., 118 B.R. 139 (Bankr.S.D.Fla.1990) compel a different result. In Atlantic Tropi-

*cal,* the court correctly recognized that, if a produce dealer "cannot prove the non-existence of the trust fund, then he has the burden of proving segregated funds apart from the trust fund were used to purchase other assets." *Id.* at 142. In *Atlantic Tropical,* unlike the instant case, a PACA trust existed when the debtor received a 1983 Chevrolet Blazer from its principal and a $40,000 donation in order to allegedly purchase a 1983 Mack truck. *Id.* at 140–42. The court concluded that because the debtor could not demonstrate that the Mack truck was purchased with that $40,000, rather than with assets subject to the PACA trust, it was subject to the PACA trust fund. *Id.* at 142. However, the court reached a different conclusion as to the Blazer truck, which having been donated in kind, could not have been purchased with PACA trust assets. *Id.* Similarly, in this case, PACA trust assets could not have been employed to purchase the Units because a PACA trust fund did not exist at the time the Units were purchased.

As a final matter, the Court notes that appellants have stipulated that the Units are property of the bankruptcy estate. Joint St. ¶ 8. It is well-established that PACA trust assets do not constitute property of the bankruptcy estate. *See Nagelberg,* 84 B.R. at 21; *Bradley,* 75 B.R. at 513; *Monterey House,* 71 B.R. at 247; *Fresh Approach,* 51 B.R. at 418–21. That admission also supports the Court's conclusion.

## CONCLUSION

In the end, the Court concludes that the bankruptcy court possessed subject matter jurisdiction over the instant adversary proceeding, and effectively joined the trustee therein. Moreover, for the reasons set forth above, the bankruptcy court's conclusion that the Units are not subject to the PACA trust is affirmed. Accordingly, the order appealed from shall be and hereby is affirmed, as modified.

It is **SO ORDERED.**