In re KORNBLUM & CO., INC., Debtor.

TOM LANGE CO., INC., and Scott Finks Co., Inc., Plaintiffs–Appellants,

v.

KORNBLUM & CO., INC., Defendant–Appellee.

No. 265, Docket 95–5013.

United States Court of Appeals, Second Circuit.

Argued Sept. 19, 1995.

Decided April 9, 1996.

Stephen P. McCarron, Washington, D.C. (McCarron & Associates, Washington, D.C., of counsel), for Plaintiffs–Appellants.

Robert P. Herzog, New York City, for Defendant–Appellee.

Before LUMBARD, MINER, and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

Plaintiffs-appellants Tom Lange Co., Inc. ("Lange") and Scott Finks Co., Inc. ("Finks") (collectively the "Creditors") appeal from a judgment entered February 10, 1995 in the United States District Court for the Southern District of New York, John E. Sprizzo, *Judge*, that affirmed, as modified, an order dated August 4, 1993 of the United States Bankruptcy Court for the Southern District

of New York, Francis G. Conrad, *Bankruptcy Judge*. The bankruptcy court had granted summary judgment in favor of Jeffrey L. Sapir, the trustee in bankruptcy (the "Trustee") of defendant-appellee Kornblum & Co., Inc. ("Kornblum"),[1] dismissing the Creditors' adversary complaint, which sought recovery for unpaid debts pursuant to a provision of the Perishable Agricultural Commodities Act of 1930, as amended ("PACA" or the "Act"), 7 U.S.C. § 499e(c)(2).

We vacate the judgment of the district court and remand for further proceedings not inconsistent with this opinion.

## Background

At all relevant times prior to December 2, 1991, when it filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701 *et seq.*, Kornblum was a dealer and/or a commission merchant of perishable agricultural commodities ("Produce") licensed under § 1(b) of PACA, 7 U.S.C. § 499a(b), and subject to the provisions of the Act.

In March 1981, Kornblum, as tenant, and the City of New York (the "City"), as landlord, entered into a nine-year lease for four store units and six accompanying office units located in the Hunts Point Terminal Market (the "Market") in the Bronx, New York. In May 1986, the City granted to the Hunts Point Terminal Produce Cooperative Association, Inc. (the "Cooperative") a master lease covering the Market. Each tenant then holding a lease with the City was given the option of surrendering its existing lease and purchasing an interest in the Cooperative. Kornblum exercised this option in May 1986, purchasing four membership certificates at a total cost of $32,000, and receiving accompanying proprietary leases for its four store and six related office units. As a member of

the Cooperative, Kornblum agreed to pay maintenance fees of $1,050 per month on each store unit.

On May 22, 1991, Kornblum sold its interests in one store and one office unit for a total of $160,000. Kornblum retained possession of the membership certificates and proprietary leases relating to the remaining three store and five office units (the "Units"), and continued to pay the monthly maintenance fees on the Units until it filed for bankruptcy on December 2, 1991. Thereafter, the Trustee contracted to sell Kornblum's interests in the Units for $310,000. At the time of its bankruptcy, the Units constituted the primary asset listed on Kornblum's bankruptcy schedules.

Lange and Finks are suppliers of Produce and, like Kornblum, were licensed as dealers and commission merchants of Produce under PACA. Lange supplied Produce to Kornblum on credit between June 30, 1989 and July 28, 1989 for which Lange is owed approximately $24,000. Finks supplied Produce to Kornblum on credit between May 8, 1991 and June 11, 1991 for which Finks is owed $40,440. Both Lange and Finks filed written notices with Kornblum and the United States Department of Agriculture (the "Department") in order to preserve their rights under PACA, *see* 7 U.S.C. § 499e(c)(3), and subsequently filed claims against Kornblum in bankruptcy. Their claims, along with those of eighteen other Produce creditors, appear on a list of PACA trust beneficiaries supplied to the Trustee by the Department.

Lange and Finks commenced an adversary proceeding in bankruptcy court on May 18, 1992, contending that Kornblum's interest in the Units constituted property of the statutory trust created for their benefit by PACA, and seeking to be paid out of the proceeds

---

1. Although the Trustee was not named as a party in this action, the bankruptcy court ruled that the Trustee was the real party in interest. *See In re Kornblum & Co. (Tom Lange Co. v. Kornblum & Co.)*, No. 91 B 15470(FGC), order at 2 (Bankr. S.D.N.Y. Aug. 4, 1993) (*"Kornblum I "*). The district court agreed that the Trustee was a necessary party under Rule 7019 of the Federal Rules of Bankruptcy Procedure, *see In re Kornblum & Co. (Tom Lange Co. v. Kornblum & Co.)*, 177 B.R. 187, 190–91 (S.D.N.Y.1995) (*"Kornblum II "*), and held that "the bankruptcy court effectively joined the trustee as required by the bankruptcy rules," *id.* at 191. This aspect of the district court's holding is not challenged on appeal, and this procedural clarification apparently constitutes the modification of the bankruptcy court order to which the district court refers in describing the bankruptcy court order as "affirmed, as modified" by the district court judgment. *See Kornblum II*, 177 B.R. at 189, 193.

from the sale of the Units. Ruling on cross-motions for summary judgment, the bankruptcy court ordered judgment in favor of the Trustee on August 4, 1993. The court determined that the Trustee was the real party in interest and that the Creditors' complaint should be dismissed for failure to name him as a party. *Kornblum I,* order at 2. The bankruptcy court also ruled that Kornblum had not diverted any PACA trust assets when it made its maintenance payments on the Units in the ordinary course of its business, and that the "Ex Post Facto Doctrine" prohibited the PACA trust from affecting the Units. *Id.*

The Creditors appealed, and the district court affirmed. The district court first rejected the Trustee's argument that the bankruptcy court lacked jurisdiction over the action, concluding that the action was a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). *Kornblum II,* 177 B.R. at 190. The court also held that the Trustee was a necessary party who had been effectively joined by the bankruptcy court. *Id.* at 190–91; *see also supra* note 1. Turning to the merits of the Creditors' complaint, the court concluded that the Units could not be part of the PACA trust because they had been acquired by Kornblum prior to any transactions between Kornblum and the Creditors. *Id.* at 192. Finally, the court held that Kornblum's monthly maintenance payments on the Units, though made subsequent to Kornblum's transactions with the Creditors, had been made in the ordinary course of business, and accordingly were not subject to recapture by the PACA trust. *Id.* at 192.

This appeal followed.

## Discussion

Congress enacted PACA in 1930 to regulate commerce in perishable agricultural commodities, which are defined by the Act as "[f]resh fruits and fresh vegetables of every kind and character," "whether or not frozen or packed in ice." 7 U.S.C. § 499a(b)(4)(A). The Act established a mandatory licensing scheme, under the supervision of the Secretary of Agriculture, for dealers, brokers, and commission merchants of perishable agricultural commodities, *id.* § 499c, and prohibits certain unfair practices in the trading of such commodities, *id.* § 499b. The Act was "designed primarily for the protection of the producers of perishable agricultural products—most of whom must entrust their products to a buyer or commission merchant who may be thousands of miles away, and depend for their payment upon his business acumen and fair dealing." H.R.Rep. No. 1196, 84th Cong., 1st Sess. 2 (1955), *reprinted in* 1956 U.S.C.C.A.N. 3699, 3701. "It was enacted to provide a measure of control over a branch of industry which is almost exclusively in interstate commerce, is highly competitive, and presents many opportunities for sharp practice and irresponsible business conduct." *Zwick v. Freeman,* 373 F.2d 110, 116 (2d Cir.) (citing H.R.Rep. No. 1196 at 2), *cert. denied,* 389 U.S. 835, 88 S.Ct. 43, 19 L.Ed.2d 96 (1967).

Congress amended PACA in 1984 to broaden the protections afforded to produce suppliers. In discussing the need for these amendments, the pertinent House report noted that:

Sellers of perishable agricultural commodities are often located thousands of miles from their customers. Sales transactions must be made quickly or they are not made at all. Many sales are consummated while the commodities are en route to a particular destination. Under such conditions, it is often difficult to make credit checks, conditional sales agreements, and take other traditional safeguards.

. . . .

Many [buyers] ... operate on bank loans secured by [the] inventories, proceeds or assigned receivables from sales of perishable agricultural commodities, giving the lender a secured position in the case of insolvency. Under present law, sellers of fresh fruits and vegetables are unsecured creditors and receive little protection in any suit for recovery of damages where a buyer has failed to make payment as required by the contract.

H.R.Rep. No. 543, 98th Cong., 1st Sess. 3 (1983), *reprinted in* 1984 U.S.C.C.A.N. 405, 406–07; *see also Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.,* 67 F.3d 1063, 1067 (2d

Cir.1995). The Act now provides in pertinent part:

> Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

7 U.S.C. § 499e(c)(2).

■ The Act establishes a scheme in which a purchaser of Produce on credit (a "Produce Debtor") is required to hold the Produce and its derivatives or proceeds in trust for the unpaid seller. Ordinary principles of trust law apply to the trusts created by the Act, see *Endico Potatoes*, 67 F.3d at 1067, so that the Produce Debtor holds the legal title to the Produce and its derivatives or proceeds but the seller retains an equitable interest in the trust property pending payment, see Restatement (Second) of Trusts § 2 (1959). Accordingly, in the event of the Produce Debtor's bankruptcy, the Bankruptcy Code excludes PACA trust assets from the bankruptcy estate. *See Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F.Supp. 346, 348 (S.D.N.Y.1993) (PACA trust assets not part of bankruptcy estate); *see also* 11 U.S.C. § 541(d) ("Property in which the debtor holds ... only legal title and not an equitable interest ... becomes property of the estate ... only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such

property that the debtor does not hold."); *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n. 10, 103 S.Ct. 2309, 2314 n. 10, 76 L.Ed.2d 515 (1983) (Bankruptcy Code "plainly exclude[s from the bankruptcy estate] property of others held by the debtor in trust at the time of the filing of the [bankruptcy] petition"); *In re Howard's Appliance Corp. (Sanyo Elec., Inc. v. Howard's Appliance Corp.)*, 874 F.2d 88, 93 (2d Cir.1989) (property held by debtor in a constructive trust excluded from bankruptcy estate). A PACA trust beneficiary is thereby entitled to claim trust property ahead of even creditors holding security interests in the property. *See Endico Potatoes*, 67 F.3d at 1067; *In re Lombardo Fruit & Produce Co. (Tom Lange Co. v. Lombardo Fruit & Produce Co.)*, 12 F.3d 806, 809 (8th Cir.1993).

■ The question presented by this appeal is whether the Units are PACA trust property from which the Creditors are entitled to seek satisfaction of their claims. Kornblum contends that the only assets held in trust for a particular PACA beneficiary are the specific Produce (and its derivatives or proceeds) supplied by that beneficiary. Kornblum argues that under its interpretation of the Act, although a Produce Debtor has the burden of proving that a disputed asset is not a derivative or proceed of a given beneficiary's Produce, Kornblum has met that burden in this case because the Units, which were indisputably acquired by Kornblum prior to its transactions with the Creditors, cannot be the proceeds of Produce supplied by the Creditors.[2] The Eighth Circuit appears to have endorsed this reading of the Act. *See Six L's Packing Co. v. West Des Moines State Bank*, 967 F.2d 256, 259 (8th Cir.1992) (indicating that a PACA trust does not include property acquired "before [the PACA beneficiary] first

2. Throughout this opinion, we refer to assets acquired with the cash proceeds of trust property as being included among the "proceeds" of that property. The same result follows, however, whether one views an asset purchased with the cash proceeds of a trust property as a second-generation "proceed" (thereby falling within the statutory definition of trust property), or as the product of a wrongful dissipation of trust assets (thereby becoming a part of the trust by operation of law). *See In re Al Nagelberg & Co. (Per-*

*eira v. Marine Midland Bank, N.A.)*, 84 B.R. 19, 20–21 (Bankr.S.D.N.Y.1988) (treating the issue of assets acquired with the cash proceeds of trust assets as a question of diversion of trust property); *see also* Restatement (Second) of Trusts § 202(1) (1959) ("Where the trustee by the wrongful disposition of trust property acquires other property, the beneficiary is entitled ... to enforce a constructive trust of the property so acquired....").

entered into a PACA-qualified transaction with [the Produce Debtor]").

The Creditors counter that the *res* of a PACA trust is not so limited. Under their view of the statutory scheme, a single PACA trust arises upon the sale of Produce on credit to a Produce Debtor. Upon the occurrence of subsequent sales of Produce to that Produce Debtor on credit, new unpaid Produce suppliers join the undifferentiated pool of trust beneficiaries, and the Produce purchased from these suppliers becomes the property of the single PACA trust. Thus, according to the Creditors, all of the Produce Debtor's Produce (and derivatives or proceeds) are held in a single trust of which all of the Produce Debtor's PACA creditors are beneficiaries. Only when every existing beneficiary has been paid in full does the PACA trust cease to exist and the Produce Debtor become the equitable owner of any remaining trust assets. The Creditors contend that summary judgment was inappropriate under their interpretation of the Act because there exists a question of fact whether, at the time of their credit transactions with Kornblum, the Units were the property of an extant PACA trust of which the Creditors became beneficiaries by selling Produce to Kornblum on credit.

Several courts have agreed with the Creditors that the *res* of a PACA trust includes all of a debtor's Produce-related assets regardless of their origin. *See, e.g., Sanzone–Palmisano Co. v. M. Seaman Enters., Inc.,* 986 F.2d 1010, 1012 (6th Cir.1993) (holding that PACA trust applies to all of a debtor's Produce-related inventory and proceeds thereof, regardless of whether the trust beneficiary or another Produce supplier was the source of such inventory); *In re W.L. Bradley Co.,* 75 B.R. 505, 509 (Bankr.E.D.Pa.1987) (same); *In re Fresh Approach, Inc.,* 51 B.R. 412, 422 (Bankr.N.D.Tex.1985) (same). As far as we can ascertain, however, in only one case has a court had the occasion to apply this interpretation of the Act in the context of a PACA beneficiary's attempt to reach an asset acquired by a Produce Debtor prior to the Produce Debtor's transactions with that beneficiary. *See In re Atlantic Tropical Mkt.*

*Corp.,* 118 B.R. 139, 141–42 (Bankr.S.D.Fla. 1990).

This Court previously considered the statutory trust provisions of PACA in *JSG Trading Corp. v. Tray–Wrap, Inc.,* 917 F.2d 75 (2d Cir.1990). In that case, JSG Trading Corp. ("JSG"), an unpaid supplier of tomatoes, sought an injunction requiring Tray Wrap, Inc., the Produce Debtor, to maintain in a segregated account the proceeds from the sale of JSG's tomatoes. In the course of rejecting JSG's contention that PACA required segregation of trust assets, we assumed that the trust *res* consisted only of the specific produce sold by JSG, along with the derivatives, receivables, and proceeds thereof. Specifically, we noted that "if the commodities themselves [i.e., the tomatoes supplied by JSG] or other products derived from them are no longer in the buyer's possession, the value of the trust *res* cannot be greater than the proceeds or receivables derived from the resale of those commodities or products." *Id.* at 79; *see also id.* at 77 (describing trust assets as "the tomatoes … and … all inventories of food or other products derived from them and … any receivables or proceeds realized from their sale").

The Creditors argue that these statements in *JSG Trading Corp.* are dicta, and accordingly do not control the decision of this appeal. We agree. The issue decided in *JSG Trading Corp.* was "whether [PACA] authorizes preliminary injunctive relief against a buyer that refused to pay for the tomatoes it ordered because of a contract dispute," *id.* at 76, and our ruling was that "a seller is not automatically entitled to a preliminary injunction that would require a buyer to segregate and hold trust assets separate from other assets of the buyer's business," *id.* It was not necessary to that determination to address, much less resolve, the issue presented on this appeal, and the fact patterns presented in *JSG Trading Corp.* and this case are clearly dissimilar.

We therefore address *de novo* the issue of statutory interpretation presented for our resolution. In interpreting a statute, we begin with " 'the language of the statute itself.' " *Larrabee by Jones v. Derwinski,* 968 F.2d 1497, 1499 (2d Cir.1992) (quoting

*Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)).

As previously noted, § 499e(c)(2) directs that

> commodities received ... in *all transactions,* and *all inventories* of food or other products derived [therefrom], and *any receivables or proceeds* from the sale of such commodities or products, shall be held ... in trust for the benefit of *all unpaid suppliers or sellers of such commodities or agents involved in the transaction,* until full payment of the sums owing in connection with *such transactions* has been received.

*Id.* (emphasis added). All of the emphasized language points to a single, undifferentiated trust for the benefit of all sellers or suppliers of Produce except the phrase "involved in the transaction," which we do not read as countermanding the clear import of the balance of the statutory language. Rather, we read this phrase as having the meaning, in context, of "involved in any such transaction," thereby harmonizing with the balance of the language in § 499e(c)(2).

Furthermore, the regulation promulgated by the Secretary of Agriculture to implement the statutory trust, 7 C.F.R. § 46.46, clearly delineates a single, undifferentiated trust for the benefit of all sellers and suppliers. The pertinent provisions of § 46.46 read as follows:

> (c) *Trust assets.* The trust is made up of perishable agricultural commodities received in all transactions, all inventories of food or other products derived from such perishable agricultural commodities, and all receivables or proceeds from the sale of such commodities and food or products derived therefrom. Trust assets are to be preserved as a nonsegregated "floating"

trust. Commingling of trust assets is contemplated.

> (d) *Trust benefits.* (1) When a seller, supplier or agent ... transfers ownership, possession, or control of goods to a commission merchant, dealer, or broker, it automatically becomes ·eligible to participate in the trust. Participants who preserve their rights to benefits [by filing the statutory notice] remain beneficiaries until they are paid in full.

This regulation strongly fortifies our view that the Creditors proffer the correct interpretation of § 499e(c)(2). In cases of statutory ambiguity, we are counselled by *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), to defer to the statutory construction of the agency that administers the statute if that construction is "permissible," whether or not that construction (1) is the only one that the agency "permissibly could have adopted," or (2) constitutes "the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Id.* at 842–43 & n. 11, 104 S.Ct. at 2781–82 & n. 11 (collecting cases).

■ In any event, we agree with the reading of § 499e(c)(2) that is provided by § 46.46. We accordingly accept the Creditors' argument that a single PACA trust exists for the benefit of all of the sellers to a Produce Debtor, and continues in existence until all of the outstanding beneficiaries have been paid in full.[3] It was therefore inappropriate to enter summary judgment against the Creditors on the basis that Kornblum had acquired the Units prior to its transactions with the Creditors,[4] and the case must be remanded.

---

3. We note the district court's concern that the Creditors' interpretation of PACA would effectively preclude Produce Debtors "from obtaining secured loans on warehouse equipment, furniture, trucks and any other real or personal property." *Kornblum·II,* 177 B.R. at 192. This is a legitimate policy consideration that might be advanced in support of an amendment to § 499e(c)(2), but it does not dissuade us from our reading of the statute as presently written. There are, of course, counter-veiling policy con-

cerns with respect to the protection of suppliers of Produce.

4. We agree with the district court, *see Kornblum II,* 177 B.R. at 192, that Kornblum's monthly maintenance payments for the Units constitute the functional equivalent of rent, and accordingly should not be deemed to have been made to acquire the Units. Thus, the Units did not become trust property by virtue of those payments.

To prevail on remand, Kornblum will bear the burden to establish either that (1) no PACA trust existed when the Units were purchased; (2) even though a PACA trust existed at that time, the Units were not purchased with trust assets; or (3) although a PACA trust existed when the Units were purchased and the Units were purchased with trust assets, Kornblum thereafter paid all unpaid sellers in full prior to the transactions involving the Creditors, thereby terminating the trust. *See Sanzone–Palmisano Co.*, 986 F.2d at 1012 ("[T]he trust beneficiary need not prove that it, and not another produce supplier, was the source of the produce or produce-related assets."); *Six L's Packing Co.*, 967 F.2d at 258 ("[T]he burden is on the PACA debtor ... to show that the disputed [asset] is from a non-trust source."); *Fresh Approach*, 51 B.R. at 422 (same); *see also International Bhd. of Teamsters v. United States*, 431 U.S. 324, 359 n. 45, 97 S.Ct. 1843, 1867 n. 45, 52 L.Ed.2d 396 (1977) ("Presumptions shifting the burden of proof are often created to reflect judicial evaluations of probabilities and to conform with a party's superior access to the proof."). Otherwise, the Creditors will be entitled to reach the proceeds of the sale of the Units in satisfaction of their PACA claims against Kornblum.

### Conclusion

The judgment of the district court is vacated and the case is remanded for further proceedings not inconsistent with this opinion. Costs to Lange and Finks.