07-3041-cv
A&J Produce v. Bronx Overall Economic Development Corp.

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2007

(Argued June 12, 2008          Decided September 10, 2008)

Docket No. 07-3041-cv (L), 07-3402-cv (Con)

-----------------------------------------------------------

A&J Produce Corp., J&C Enterprise, Inc., Mercatropic Corp.,
Tarsana Fruit Co., Christopher Ranch, LLC, Dole Fresh Fruit
Co., Naumes, Inc. and Pacific Fruit, Inc.,

Plaintiffs-Appellees,

U.S. Produce Exchange, Cuba Tropical, Inc., Del Monte Fresh
Produce, N.A., Inc., London Fruit Inc., Banacol Marketing
Corp., Florida Fresh, Inc., Stanley Orchard Sales, Inc. and
United Apple Sales, Inc.,

Intervenors-Plaintiffs-Appellees,

v.

Bronx Overall Economic Development Corporation,

Defendant-Appellant.

-----------------------------------------------------------

Before: POOLER and SOTOMAYOR, Circuit Judges, and RESTANI,[*]
Judge.

        Defendant-Appellant Bronx Overall Economic

Development Corporation ("BOEDC") appeals from a judgment

and order of the United States District Court for the

Southern District of New York (George Daniels, Judge)

_____

        [*] The Honorable Jane A. Restani, Chief Judge of the United
States Court of International Trade, sitting by designation.

granting in part Plaintiff-Appellee Tarsana Fruit Company's ("Tarsana") Motion for Turnover of PACA Trust Assets in the Court's Registry and denying BOEDC's Cross-Motion for Summary Judgment.

Affirmed.

LOUIS W. DIESS, McCarron & Diess, Washington, DC; Sherylee F. Bauer, Dobbs Ferry, NY, for Plaintiff-Appellee Tarsana Fruit Co.

Tom M. Fini, Cadwalader, Wickersham & Taft LLP, New York, NY, for Plaintiff-Appellee Pacific Fruit, Inc.

Bruce Levinson, Law Office of Bruce Levinson, New York, NY, for Plaintiffs-Appellees Christopher Ranch, LLC, Dole Fresh Fruit Co., and Naumes, Inc.

Mark Mandell, Law Office of Mark Charles Hewitt Mandell, Esq., Annandale, NJ, for Plaintiffs-Appellees A&J Produce Corp., J&C Enterprise, Inc., and Mercatropic Corp.

Mark A. Amendola, Martyn & Associates, Cleveland, OH; Steve Kasper, New York, NY, for Intervenors-Plaintiffs-Appellees Banacol Marketing Corp., Cuba Tropical, Inc., Del Monte Fresh Produce, N.A., Inc., Florida Fresh, Inc., London Fruit Inc., Stanley Orchard Sales, Inc., and United Apple Sales, Inc.

Leonard Kreinces, Kreinces & Rosenberg, Westbury, NY, for Intervenor-Plaintiff-Appellee U.S. Produce Exchange.

JOHN P. AMATO, Hahn & Hessen, LLP, New York, NY, for Defendant-Appellant Bronx Overall Economic Development Corporation.

**PER CURIAM:**

This appeal concerns the distribution of proceeds received from the sale of certain assets in a statutory trust created pursuant to the Perishable Agricultural Commodities Act, 7 U.S.C. § 499e(c) ("PACA"). We agree with the district court that a secured creditor's lien on PACA trust assets does not constitute a transfer of the assets beyond the reach of PACA protected creditors.

### BACKGROUND

In 1986, American Banana Company, Inc. ("ABC"), a perishable agricultural commodities dealer, purchased unit shares in the Hunts Point Terminal Produce Cooperative Association ("the Units"). When BOEDC made a one million dollar loan to American Banana Realty ("ABR"), an affiliate of ABC, in 1998,[1] the loan was guaranteed by both ABC and ABR and secured by a first priority interest in the Units.

In 2001 and 2002, Tarsana and other produce sellers ("Appellees") filed complaints against ABC for failure to pay for various deliveries of produce. The complaints were

---

[1] ABC had operated out of the Hunts Point Terminal Market for a number of years, and purchased the Units when the market was converted to a cooperative. When ABC considered relocating to New Jersey in 1998, the BOEDC loans were extended as part of an economic incentive package to keep ABC in New York.

3

consolidated into the case currently on appeal. ABR defaulted on the BOEDC loan in 2001, and BOEDC initiated foreclosure proceedings against ABC seeking recourse to the collateral units. After plaintiff A&J Produce Corporation ("A&J") moved to enjoin the foreclosure action, all parties to the consolidated case agreed to allow A&J to purchase the Units and deposit the net proceeds into the court's registry pending resolution of the competing claims.[2] In 2005, Tarsana moved for turnover of the proceeds and other PACA trust assets allegedly held by ABC to PACA creditors, and BOEDC cross-moved for summary judgment.[3]

The district court found on September 8, 2006, that the assets were part of a PACA trust in existence when Appellees brought their claims, and that BOEDC's security interest in the Units did not remove the assets from the PACA trust or give BOEDC priority over the PACA creditors. The district court therefore granted Tarsana's motion in part and denied BOEDC's cross-motion, (see Order (Sept. 11, 2006)), and

---

[2] In April 2002, the district court ordered all ABC creditors to intervene to preserve their claims, and several PACA and non-PACA creditors filed intervenor complaints.

[3] Another defendant in some of the consolidated cases, George Mouyious, also cross-moved for an order directing the assets to be used to satisfy ABC's tax obligations and asking that he not be held personally liable. The motion was granted in part and denied in part, and the issues are not currently on appeal.

4

ordered the distribution of the trust assets according to the valid claims of the PACA creditors, (see Order (July 10, 2007)).[4]  BOEDC appeals.

## DISCUSSION

We review the district court's grant or denial of summary judgment <u>de novo</u>.  <u>Tasini v. N.Y. Times Co.</u>, 206 F.3d 161, 165 (2d Cir. 2000), <u>aff'd</u>, 533 U.S. 482 (2001).

Congress enacted PACA in 1930 to regulate the sale of perishable agricultural commodities and amended the statute in 1984 to further strengthen the protections provided to produce suppliers.  <u>Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.</u>, 67 F.3d 1063, 1066–67 (2d Cir. 1995). The statute provides, in relevant part, that

> [p]erishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

7 U.S.C. § 499e(c)(2).  This section "imposes a 'non-

---

[4] Judge Michael B. Mukasey presided over the original proceedings in this matter, after which the case was reassigned to Judge George B. Daniels who issued an order directing the entry of a final judgment.

5

segregated floating trust' on the commodities and their derivatives, and permits the commingling of trust assets without defeating the trust." Endico Potatoes, 67 F.3d at 1067 (quoting 7 C.F.R. § 46.46(c)). This "highly unusual trust beneficiary status" permits sellers, in the event of default, "to trump the buyers' other creditors, including secured ones." Am. Banana Co. v. Republic Nat'l Bank of N.Y., N.A., 362 F.3d 33, 38 (2d Cir. 2004).

We previously addressed whether the very type of trust property at issue here, the Units, could be considered PACA trust assets in In re Kornblum & Co., 81 F.3d 280 (2d Cir. 1996). Kornblum determined that the challenging party bears the burden of proving either that "(1) no PACA trust existed when the Units were purchased; (2) even though a PACA trust existed at that time, the Units were not purchased with trust assets; or (3) although a PACA trust existed when the Units were purchased and the Units were purchased with trust assets, [the PACA trust debtor] thereafter paid all unpaid sellers in full prior to the transactions involving the Creditors, thereby terminating the trust." Id. at 287.

Appellees claim that a PACA trust was in existence when the Units were purchased, that trust proceeds were used to purchase the Units, and that the trust has remained in

continuous existence since that date. BOEDC, on the other hand, contends that the trust terminated when the PACA creditors with claims as to goods sold prior to BOEDC's loan were paid in full. Kornblum rejected this argument, holding that "a single PACA trust exists for the benefit of all of the sellers to a Produce Debtor, and continues in existence until all of the outstanding beneficiaries have been paid in full." Id. at 286. There is no evidence in the record indicating that all PACA creditors were paid between the time the Units were purchased and the lien was granted to BOEDC, and BOEDC has therefore not met its burden of demonstrating that the Units were free of the PACA trust. Accordingly, we affirm the district court's finding that the Units are PACA trust assets.

BOEDC further maintains that the grant of a lien on the Units constituted a transfer of the trust assets such that they were removed from the PACA trust in favor of BOEDC. BOEDC asserts that a breach of trust analysis is therefore warranted to determine if ABC breached its fiduciary duties under the trust when it granted BOEDC a lien on the Units. It is necessary, however, to first determine the substance of the transaction by analyzing the transfer of risk involved, in order to resolve whether the lien constituted a purchase for value or merely a security interest. See Endico Potatoes, 67

F.3d at 1068-69.  As we explained in <u>Endico Potatoes</u>,

> [w]here the lender has <u>purchased</u> the accounts receivable, the borrower's debt is extinguished and the lender's risk with regard to the performance of the accounts is direct, that is, the lender and not the borrower bears the risk of non-performance by the account debtor.  If the lender holds only a security interest, however, the lender's risk is derivative or secondary, that is, the borrower remains liable for the debt and bears the risk of non-payment by the account debtor, while the lender only bears the risk that the account debtor's non-payment will leave the borrower unable to satisfy the loan.

<u>Id.</u> at 1069.  A creditor holding "only a security interest," therefore, retains that interest "subject to the rights of the trust beneficiaries."  <u>Id.</u> at 1068.

Other courts have similarly found that for PACA purposes, "[l]enders who receive trust assets through enforcement of a security agreement are <u>not</u> bona fide purchasers . . . because such transfers are not 'for value.'" <u>Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.</u>, 336 F.3d 410, 413-14 (5th Cir. 2003); <u>see also</u> <u>Consumers Produce Co. v. Volante Wholesale Produce, Inc.</u>, 16 F.3d 1374, 1380 n.3 (3d Cir. 1994)("[W]hen secured lenders use their security agreement to foreclose on property or otherwise enforce their contractual rights, they essentially force the transfer of trust property in satisfaction of an antecedent debt. Any such transfer . . . through the exercise of rights under a security

8

agreement is not for value.") (quoting C.H. Robinson Co. v. Trust Co. Bank, N.A., 952 F.2d 1311, 1315 n.5 (11th Cir. 1992)).

Here, BOEDC's risk remained secondary, as the possibility that the Units would change in value would affect BOEDC only if ABC were unable to satisfy the loan. As BOEDC held only a security interest in the Units, its claims remain inferior to the claims of the PACA creditors. Endico Potatoes, 67 F.3d at 1069. Any other result would elevate the rights of secured creditors above those of PACA creditors, contrary to the intent of the statute. See id. at 1067. Accordingly, we affirm the district court's finding that the Units were not transferred beyond the reach of the PACA creditors.

## CONCLUSION

For the foregoing reasons, we conclude that a secured creditor's lien does not constitute a transfer of PACA trust assets within the terms of the statute, and proceeds generated from the sale of such assets are therefore properly awarded to the PACA creditors. Accordingly, we AFFIRM the judgment of the district court.