**MOVSOVITZ & SONS OF FLORIDA, INC., et al., Plaintiffs**

v.

**SCOTIABANK, Defendant.**

**Civil No. 04–2254(SEC).**

United States District Court, D. Puerto Rico.

Aug. 18, 2006.

Craig Alan Stokes, San Antonio, TX, Louis W. Diess, III, Washington, DC, Orlando Fernandez, Baez & Juarbe, San Juan, PR, for Plaintiffs.

James W. McCartney, Cancio, Nadal, Rivera & Diaz, San Juan, PR, for Defendant.

## OPINION AND ORDER

CASELLAS, Senior District Judge.

Pending before the Court are the parties' cross-motions for summary judgment (Dockets ## 28 & 32) and oppositions thereto (Docket ## 33 & 35). After carefully examining the parties' arguments, the case record and the applicable law, Plaintiffs' motion will be **GRANTED in part** and **DENIED in part** and Scotiabank's motion will be **DENIED.**

### Factual Background

Plaintiffs in this case are Movsovitz & Sons of Florida ("Movsovitz") and West Coast Distributing, Inc. ("West Coast"), both engaged in the business of buying and selling wholesale quantities of perishable agricultural commodities (herein "produce") and dealers subject to, and licensed under, the provisions of the Perishable Agricultural Commodities Act, 7 U.S.C. § 499e(c) (hereinafter "PACA"). Plaintiffs aver that between January 18, 2002 and February 26, 2002, they sold to North Produce, a dealer of produce under PACA, various wholesale lots of produce worth $116,217.50 (Movsovitz) and $120,588.80 (West Coast). They further aver that North Produce never paid them for the produce delivered. Due to this non-payment, Plaintiffs contend that a statutory trust was created under PACA and that Plaintiffs are the beneficiaries of all the assets in this trust until full payment of the amount owed by North Produce is made [1].

During the year 2001, Scotiabank entered into various loan agreements with North Produce. Scotiabank is a secured lender of North Produce. Plaintiffs have filed suit against Scotiabank to recover certain assets allegedly received by Scotiabank in violation of the trust provisions of PACA.

### Standard of Review

Fed.R.Civ.P. 56(b) provides that: "A party against whom a claim ... is asserted

[1]. On April 29, 2002, Movsovitz filed suit, and West Coast intervened, against North Produce and its shareholders, Mr. Axel González and Ms. Sasha Aponte (Civil No. 02–1634(SEC)). After the Court's ruling on Plaintiff's motion for summary judgment and having entered judgment against North Produce, the parties informed the Court that they had reached an agreement and filed a stipulation for dismissal (Docket # 58). The Court entered Amended Judgment (Docket # 60). The debt that gave rise to the litigation in Civil No. 02–1634(SEC) is the same that motivated the filing of the instant claim against Scotiabank under the PACA trust provisions.

... may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part [of the claims asserted against him/her]." The Court may grant the movant's motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202(1986); *NASCO, Inc. v. Pub. Storage, Inc.*, 29 F.3d 28 (1st Cir.1994). "The principal judicial inquiry required by Rule 56 is whether a genuine issue of material fact exists." Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* § 2725, p. 401.

When determining whether to grant summary judgment, the Court may not weigh the evidence. *Casas Office Machs., Inc. v. Mita Copystar Am., Inc.*, 42 F.3d 668 (1st Cir.1994). Summary judgment "admits of no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." *Id. (citing Greenburg v. P.R. Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir.1987)). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. *Casas Office Machs.*, 42 F.3d at 684.

While the moving party has the burden of initially establishing that there is "an absence of evidence to support the non-moving party's case," *Maldonado–Denis v. Castillo–Rodríguez*, 23 F.3d 576, 581 (1st Cir.1994); the nonmovant has a "corresponding obligation to offer the court more than steamy rhetoric and bare conclu-

sions." *Lawton v. State Mut. Life Assurance Co. of Am.*, 101 F.3d 218, 223 (1st Cir.1996). Furthermore, "the nonmovant must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trial-worthy issue.... Failure to do so allows the summary judgment engine to operate at full throttle." *Id.; see also Kelly v. United States*, 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); *Medina Muñoz*, 896 F.2d at 8, (*quoting Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989)) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.")

Upon examining the motions filed by both sides and the facts set forth in their respective statements of uncontested facts (*see* Dockets ## 28 & 32), the Court notes that the following material facts remain uncontested:

1. Plaintiffs are corporations engaged in the business of buying and selling wholesale quantities of perishable agricultural commodities in interstate commerce during the period of time at issue (Docket # 28 SUF Nos. 1 & 2).

2. Axel González d/b/a North Produce was a dealer of produce licensed under PACA as a dealer (Docket # 28 SUF No. 3).

3. Defendant Scotiabank is a secured lender of North Produce and knew North Produce was in the business of buying and selling produce (Docket # 28 SUF No. 5).

4. Movsovitz began selling wholesale quantities of produce to North Produce in November 1999 (Docket # 28 SUF No. 6).

5. Between January 18, 2002 and February 26, 2002 Movsovitz sold various wholesale lots of produce worth $ 116,217.50 which remain unpaid (Docket # 28 SUF No. 7).

6. West Coast sold various wholesale lots of produce worth $120,588.80 which remain unpaid (Docket # 28 SUF No. 8).

7. Movsovitz and West Coast duly delivered the aforesaid produce to North Produce and North Produce accepted the delivery (Docket # 28 SUF No. 9).

8. Movsovitz and West Coast preserved their interest under the trust provisions of the PACA by sending invoices to North Produce which contained the language required under PACA (Docket # 28 SUF No. 10).

9. Mr. González received financing by Scotiabank in several occasions and took mortgages out on his real properties to secure the payment of said loans (Docket # 28 SUF Nos. 13 & 14).

10. North Produce leased a new facility at which it began improvements in May 2001 (Docket # 28 SUF No. 15).

11. In 2001, Scotiabank made several loans to North Produce to assist with the improvements of the leased facilities. Subsequently, Scotiabank took a security interest in the subsidy payments North Produce was to receive from the Puerto Rico Industrial Development Company (herein "PRIDCO")(Docket # 28 SUF Nos. 16–17).

12. Scotiabank also provided other loans to North Produce for working capital and temporary overdraft and took security interests in the machinery and equipment of North Produce as well as on the proceeds of North Produce to secure the loans (Docket # 28 SUF Nos. 19–20).

13. Between September 26, 2001 and June 28, 2002, North Produce made payments on one of the loans provided by Scotiabank amounting to $26,819.00 (Docket # 32 SUF No. 6).

14. Between November 27, 2001 and June 28, 2002, North Produce made payments on one of the loans provided by Scotiabank amounting to $5,831.00 (Docket # 32 SUF No. 7).

15. North Produce ceased operations in June 2002 (Docket # 28 SUF No. 25).

16. On June 28, 2002, Scotiabank learned that North Produce had ceased operating (Docket # 33 SUF No. 25).

17. On July 16, 2004, Scotiabank sold North Produce's equipment in which it had a security interest appraised at $593,400.00 for $7.000.00 (Docket # 28 SUF No. 27).

18. In dealing with the mortgage on the González residence in Hatillo, Scotiabank was in the process of foreclosing on that property when it accepted an offer of sale for $150,000 (Docket # 32 SUF No. 11).

19. Scotiabank is currently in the process of foreclosing on Mr. González's real property in Camuy, Puerto Rico (Docket # 28 SUF No. 29).

## Applicable Law and Analysis

Plaintiffs seek summary judgment alleging that certain assets received, or which will be received, by Scotiabank in repayment under the loan agreements and/or as a result of the foreclosure proceedings carried out by Scotiabank are trust assets under PACA and belong to its beneficiaries, Plaintiffs. The assets in question include: (1) $33,483.00 received by Scotiabank from North Produce during 2001 through 2002 in repayment of some of the

loans made to North Produce[2]; (2) the proceeds obtained by Scotiabank as a result of the foreclosure of a real property belonging to Mr. Axel González and Ms. Sasha Aponte, North Produce's sole shareholders; (3) the proceeds of the future foreclosure of a second real property belonging to Mr. González and Ms. Aponte; (4) $82,243.77 received by Scotiabank in connection to the loans given by Scotiabank to North Produce for the improvements of the a leased facility; and (5) $7,000.00 obtained by Scotiabank from the sale of North Produce's equipment (Docket # 28). Plaintiffs argue that since these payments were all made in breach of the PACA trust, Scotiabank must disgorge all of the aforementioned assets in favor of Plaintiffs. On the other hand, Scotiabank seeks the entry of summary judgment in its favor by arguing that the assets received were not included in the PACA trust and, alternatively, that it is protected by the bona fide purchaser defense in the receipt of the aforementioned assets (Docket # 32).[3]

■ The purpose of PACA was "primarily to eliminate unfair practices in the marketing of perishable agricultural commodities in interstate commerce in the case of a declining market by making it difficult for unscrupulous persons to take advantage of shippers by wrongful rejection of the goods upon arrival at a point where it is expensive and impractical for the shipper to enforce his legal rights." *Martinelli & Co. v. Simon Siegel Co.*, 176 F.2d 98, 100 (1st Cir.1949). *See* 7 U.S.C. § 499e(c)(1). Among other things, PACA requires "licensing of all entities qualifying as commission merchants, dealers, and brokers (buyers); bars a variety of unfair trade practices by buyers; and provides various remedies when violations occur." *Am. Banana Co., Inc. v. Republic Nat'l Bank of N.Y.*, 362 F.3d 33, 36 (2d Cir.2004)(internal citations omitted). "PACA requires buyers to make 'full payment promptly' for all commodities received from produce sellers." *Id. (citing* 7 U.S.C. § 499b(4)). Accordingly, PACA provides for the creation of a statutory trust whenever produce is delivered and unpaid by the buyer.

■ The supplier of produce becomes a beneficiary of said statutory trust which is a "non-segregated floating trust" that applies to all of the buyer's produce in inventory and all proceeds from the sale of produce until full payment is made. Essentially, the trust comprises: (1) produce purchased from suppliers, (2) all invento-

**2.** In their motion for summary judgment, Plaintiffs argue that the amount received by Scotiabank in repayment for loans amounted to $34,624.00 (Docket # 28 at p. 12). However, in its counter-statement of uncontested facts and motion for summary judgment, Scotiabank avers that the money received as repayment of the loans in question amounted to $32,650.00. *See* Docket # 33 SUF Nos. 21 & 22 and Docket # 32 SUF Nos. 5 & 7. However, based on Plaintiffs' opposition to Scotiabank's motion for summary judgment and their counter-statement of uncontested facts, it appears that the exact amount received in repayment was of $33,483.00 (Docket # 35 at p. 6 n. 2 & Docket # 36 SUF No. 7). Plaintiffs arrived at this number by examining the statement of accounts which they submitted as an exhibit to their motion in opposition. *See* Docket # 29, Ex. 12. Without a reply from Scotiabank calling into question this last number, we will assume for the purposes of this Opinion and Order that the amount paid by North Produce in repayment of the loans totaled of $33,483.00.

**3.** Scotiabank does not dispute that the $7,000.00 obtained from the sale of the North Produce equipment are subject to the PACA trust. However, it claims that disgorgement of these assets is inappropriate because there may be other trust beneficiaries with claims to those assets. *See* Docket # 32 at p. 10. We will briefly discuss this issue below.

ries of foods or other products derived from the produce, and (3) receivables or proceeds from the sale of said produce. *In re Magic Rests, Inc.*, 205 F.3d 108, 111 (3d Cir.2000); *Hiller Cranberry Prods., Inc. v. Koplovsky*, 165 F.3d 1, 4–5 (1st Cir.1999). To this end, the PACA provides that:

> Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers or agents.

7 U.S.C. at 499e(c)(2). Thus, when produce suppliers, such as Plaintiffs, have delivered produce which the buyer has accepted and failed to pay for, the supplier may have a cause of action for failure to pay trust funds, failure to pay for goods sold, and unlawful dissipation of trust assets against the corporate officials. *See Am. Banana Co.*, 362 F.3d at 38.

██ The law is clear that a "PACA beneficiary has priority over any secured creditor on the purchaser's commodity-related assets to the extent of the amount of his claim." *Hiller Cranberry Prods.*, 165 F.3d at 8–9. Thus, a trustee (e.g. corporate official or director) has a fiduciary duty to the beneficiaries of the PACA trust and is required to preserve the assets of said trust so that its beneficiaries may recover the money owed to them. As such, "an individual who is in the position to control the PACA trust assets and who

does not preserve them for the beneficiar[y] has breached a fiduciary duty, and is personally liable [ ]." *Id.* (stating that a trustee "who uses trust assets for any purpose other than repayment of the supplier is liable to the trust beneficiaries. This includes use of the proceeds for the sale of perishables for legitimate business expenditures, such as the payment for rent, payroll, or utilities.").

## 1. Repayment of Loans from 2001 through 2002

██ Plaintiffs allege that because Scotiabank received $33,483.00 between September 26, 2001 and June 28, 2002 as repayment of certain loans made to North Produce, and Scotiabank knew that North Produce was financially insolvent during that time, that Scotiabank must be required to disgorge that money in favor of Plaintiffs (Docket # 28 at p. 12). In response, Scotiabank argues that it is entitled to summary judgment in its favor since it is covered by the bona fide purchaser defense for it received the repayment "for value" and did not know, nor had reason to know, that North Produce had breached its duties under the PACA trust provisions, especially in light of the fact that there is no evidence of this alleged breach until February 2002 (Docket # 32 at p. 7).

██ As previously discussed, "[a] PACA trust beneficiary is [ ] entitled to claim trust property ahead of even creditors holding security interests in the property." *In re Kornblum & Co., Inc.*, 81 F.3d 280, 284 (2d Cir.1996) (citations omitted). Therefore, a secured lender will be forced to return trust property it has received unless it can establish either that (1) no PACA trust existed when the property was transferred; (2) even though a PACA trust existed at that time, the transfer of property did not include trust assets;

or (3) although a PACA trust existed when the property was transferred and the property included trust assets, all unpaid sellers were paid in full prior to the transaction. *In re Kornblum*, 81 F.3d at 287. Alternatively, it can establish that although it received trust property in breach of the trust, it was a bona fide purchaser of the property.

"Under general trust principles, a bona fide purchaser receives trust property free of trust even if the property was transferred in breach of trust." *C.H. Robinson Co. v. Trust Co. Bank, N.A.*, 952 F.2d 1311, 1313 (11th Cir.1992). To qualify as a bona fide purchaser, Scotiabank "must show that any trust property [it] received was transferred 'for value' and 'without notice of the breach of trust.'" *Id.* at 1314; *see also Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.*, 67 F.3d 1063, 1068 (2d Cir.1995). As a general rule, a transfer of trust assets in repayment of a previous debt is not considered for value. However, this rule has one exception: when the property transferred is money. *Id.; Albee Tomato, Inc. v. A.B. Shalom Produce Corp.*, 1995 WL 766306 *3 (S.D.N.Y.) (referring to the "money transfer exception"). In the instant case, there is no dispute that the payments made by North Produce between September 2001 and June 2002 were made with money and as repayment of pre-existing debts. *See* Docket # 32 SUF Nos. 6 & 7. Accordingly, because Scotiabank received the money from North Produce in the ordinary course of business as monetary loan repayments, the transfer was for value and the first element of proof for the defense is met.

To be able to keep the trust assets, Scotiabank must also prove that it received the funds "without notice of the breach of trust." *Id.* (citations omitted). "A person has notice of a breach of trust if ... he [or she] knows or should know of the breach of trust...." *Albee Tomato*, 1995 WL 766306, *4 (*quoting Consumers Produce v. Volante Wholesale Produce*, 16 F.3d 1374, 1380 (3d Cir.1994)). This notice may be actual or constructive. *Id.* Plaintiffs do not appear to argue that Scotiabank had actual knowledge of the breach of trust. Instead, they focus on Scotiabank's constructive knowledge of the breach of trust. Plaintiffs argue that Scotiabank must have had knowledge of the breach of trust because Scotiabank knew of North Produce's financial insolvency prior to receiving payment. In support of this contention Plaintiffs point to Scotiabank's admission in the unanswered request for admissions stating that "[a]t the time [it] received payments from North Produce, [it was] aware that North Produce was becoming financially insolvent, or was in danger of becoming financially insolvent."[4] Plaintiffs also argue that because North Produce had 25 overrun requests in its account between July 2, 2001 and Feb. 25, 2002, Scotiabank must have known of North Produce's financial insolvency (Docket # 35, Ex. 1). Finally, Plaintiffs also point to Scotiabank's failure to require of North Produce the filing of its financial information in time. Plaintiffs contend that had Scotiabank diligently continued to request this financial information, it would have known that the payments it was receiving from North Pro-

4. According to Plaintiffs, this request for admission was sent to Scotiabank on June 1, 2005 and Scotiabank failed to furnish a response within the time provided by the Federal Rules of Civil Procedure. Scotiabank does not address this point in its opposition nor in its cross-motion for summary judgment. *See* Dockets # # 33 & 32. Therefore, pursuant to Rule 36(a) & (b) of the Federal Rules of Civil Procedure the questions included by Plaintiffs in this request for admissions are deemed admitted (Docket # 28, Ex. 17).

duce must have been in breach of the PACA trust (Docket # 35, Ex. 3).

Scotiabank has not presented any evidence on its behalf other than Mr. Len Wright's statement under penalty of perjury that prior to June 28, 2002, when it learned that North Produce had ceased operations, it was not aware that North Produce was financially insolvent (Docket # 32, Ex. B). However, it is uncontested that Scotiabank knew that North Produce was in the business of buying and selling produce (Docket # 28 SUF No. 5). It also had knowledge that during the time it received repayment for the loans, North Produce had over drafted 25 times from its account. Furthermore, Scotiabank has presented no excuse for not requesting that North Produce comply with its obligation to provide financial information to Scotiabank during the time in question.

 Constructive knowledge implies that a party knew or should have known of the breach. As such, there is an element of reasonable diligence attached to a party's burden in order to prove that it did not have constructive knowledge of a breach of trust. *See Consumers Produce Co., Inc.*, 16 F.3d at 1382–83 ("a duty of inquiry arises when a person knows facts which under the circumstances suggest (1) that the person is dealing with a trustee and (2) that the trustee may be committing a breach of trust. If a duty of inquiry exists, and such inquiry would have disclosed the breach of trust, a person 'should have known' of the breach of trust."); *Albee Tomato, Inc. v. A.B. Shalom Produce, Corp.*, 155 F.3d 612, 616 (2d Cir.1998) (internal quotations omitted) (*quoting* Restatement (Second) of Trusts § 297 (1959)) ("A transferee should know of a breach of trust when he [or she] knows facts which under the circumstances would lead a reasonably intelligent and diligent person to inquire whether the trustee ... is committing a breach of trust, and if such inquiry when pursued with reasonable intelligence and diligence would give him [or her] knowledge of reason to know that the trustee is committing a breach of trust.").

In the instant case, Scotiabank has failed to produce sufficient evidence to support the second prong of the bona fide purchaser defense as to the repayment of the loans at issue. Although overdrafts from accounts do not necessarily mean that North Produce was not paying its suppliers, Scotiabank's lack of information as to North Produce's financial well-being is enough to deny Scotiabank refuge under the bona fide purchaser defense. This is especially true when considering that Scotiabank has already admitted that it had knowledge of North Produce's line of business and that it was aware that North Produce was financially insolvent, or becoming financially insolvent, when receiving repayment. Accordingly, we find that Scotiabank has failed to prove its bona fide purchaser defense. *See e.g., Id.* at 617 ("the lender must make the kind of inquiry as to debts owed by the trustee to PACA beneficiaries that a reasonably prudent lender would make as to debts owed by a similar borrower to a prior creditor who had rights superior to those sought by the lender."). Scotiabank's motion for summary judgment as to the monies related to the repayment of the loans is **DENIED**. Also, given that Scotiabank has not even argued that the assets used by North Produce for repaying the loans were not trust assets or that these assets were not transferred to Scotiabank in breach of the PACA trust, Plaintiffs' motion for summary judgment in this respect is **GRANTED**.

### 2. Real Property Foreclosures

 Next, the parties dispute the proceeds obtained, and those which will be

obtained, from the foreclosure proceedings of two (2) real properties which belonged to Mr. González and Ms. Aponte. Mr. González received financing by Scotiabank in several occasions and took mortgages out on two of his real properties to secure the payment of said loans (Docket # 28 SUF Nos. 13 & 14). As to the first real property, the one in Hatillo, Puerto Rico, Scotiabank has asserted that when it was in the process of foreclosing that property it accepted an offer of sale for $150,000.00 (Docket # 32 SUF No. 11). As to second property, the one in Camuy, Puerto Rico, Scotiabank is currently in the process of foreclosing it (Docket # 28 SUF No. 29).

Plaintiffs claim to be entitled to summary judgment in their favor because the proceeds received, or which will be received, by Scotiabank from the sale of said properties are within the PACA trust. They aver that since the PACA trust arose in November 1999, prior to the purchase of both properties, and Mr. González's and Ms. Aponte's sole source of income was from North Produce's business operations, the properties are trust assets (Docket # 28 at pp. 11–12). Scotiabank, on the other hand, simply argues that Plaintiffs are not entitled to summary judgment in their favor as they have included no evidence that may establish that the funds used to purchase these properties were proceeds from North Produce. We agree.

The PACA trust "automatically arises in favor of a produce seller upon delivery of produce." *Frio Ice, S.A. v. Sunfruit, Inc.,* 918 F.2d 154, 156 (11th Cir.1990) (*citing* 7 U.S.C.A. § 499e(c)(2)). Accordingly, it is reasonable to assume that a PACA trust in favor of Plaintiffs was created in November 1999. Then, there is no dispute that the properties at issue were acquired after the creation of the PACA trust. This, however, does not necessarily mean that the funds used to purchase those properties were proceeds from North Produce. *See Six L's Packing Co. v. West Des Moines State Bank,* 967 F.2d 256, 258 (8th Cir.1992) (string citations omitted) (stating that "[t]he mere fact that non-trust funds were temporarily parked in an account containing trust funds is not enough to convert these non-trust funds unto trust assets, as it is permissible to commingle PACA trust assets with non-trust assets.").

Plaintiffs rely on Exhibit # 3 attached to its motion for summary judgment to ascertain that the funds used for the purchase of the properties were proceeds from North Produce because Mr. González's only source of income came from North Produce. As Scotiabank correctly points out, however, this assertion is faulty on two respects: the exhibit submitted by Plaintiffs does not support said assertion and even if we were to assume that all Mr. González's income came from North Produce, this does not mean that he necessarily used his North Produce income to purchase the properties. That is, the money for the purchase could have come from other unspecified sources. We are cognizant that the burden is on Scotiabank to show that the disputed assets, the funds to acquire the two properties, came from a non-trust source; *see Id.* (string citations omitted); *In re Kornblum,* 81 F.3d at 287; however, as the moving parties in summary judgment, Plaintiffs must first put the Court in a position to evaluate the evidence and be able to draw reasonable conclusions therefrom. Plaintiffs have not done this. Accordingly, we find that there is triable issue of fact preventing the entry of summary judgment as to the source of the funds used to purchase these properties. *Id.* at 259 (stating that "whether the disputed payment is from a non-trust source is a question of fact."). Therefore, Plaintiffs' motion for summary judgment

on this claim is **DENIED**. On the same note, Scotiabank has not presented any evidence that aside from the money obtained via bank financing, the funds used by Mr. González to purchase the properties were non-trust funds. As such, Scotiabank's request for summary judgment on this claim is also **DENIED**.

### 3. Repayment of Loan for Improvements of Leased Property

 It is uncontested that in May 2001 North Produce leased a new facility and began improvements on such facility (Docket # 28 SUF No. 15). It is equally uncontested that on June and August of 2001, Scotiabank extended loans to North Produce to assist with the improvements of said leased facility and took a security interest in the subsidy payments North Produce was to receive from PRIDCO (Docket # 28 SUF Nos. 16–17). Thereafter, on July 3, 2002, Scotiabank received a check issued in the name of Mr. González and North Produce by PRIDCO and dated June 27, 2002 which amounted to $82,243.77. *See* Docket # 32, Ex. A. According to Scotiabank, this check was given to Scotiabank in repayment of part of loans made by Scotiabank for the improvements of the leased facility. It was issued by PRIDCO because PRICO had agreed to reimburse North Produce for the improvements North Produce made to the facility leased from PRIDCO.

Plaintiffs aver that summary judgment in its favor is warranted because the aforementioned money is a PACA trust asset which was received by Scotiabank in breach of the trust. Specifically, Plaintiffs aver that since North Produce used PACA trust funds to make the improvements to the leased property, PRIDCO's reimbursement for said improvements constitute PACA trust funds. Scotiabank counters that the money was not a PACA trust

asset since the money used to make the improvements to the leased property came from its own financing of the project and that the money received by Scotiabank was never commingled with trust proceeds—as the check was endorsed to Scotiabank directly by Mr. González.

The leased property was acquired, and improvements began, in May 2001 (Docket # 28 SUF No. 15). As such, Plaintiffs contend that North Produce assets were used at least for the early stages of the improvements. Given that financing for the improvements was first obtained by Scotiabank in June 2001, it is plausible that North Produce assets were used to pay for some of the improvements later reimbursed by PRIDCO. *See* Docket # 28, Ex. 7. However, the opposite conclusion is equally plausible since the first loan from Scotiabank for financing the improvements was obtained merely eight (8) days after the date of the contract for construction (*see* Docket # 28, Ex. 7 Contract dated May 30, 2001) and the purpose for obtaining the loans was specifically to finance the improvements of the facility (Docket # 28 SUF No. 16 & Docket # 32, Ex. B). A second loan was obtained from Scotiabank on August 24, 2001 (Docket # 28 SUF No. 17). Without any evidence on the record clearly establishing the source of all the funds for the construction, the Court cannot enter summary judgment on anyone's behalf. This is an issue of fact which will have to be ironed-out in trial by means of further documentary or testimonial evidence. Accordingly, Plaintiffs' motion for summary judgment is **DENIED**. Likewise, without any evidence from Scotiabank sustaining a bona fide purchaser defense on this claim, Scotiabank's motion for summary judgment is **DENIED**.

### 4. Sale of North Produce Equipment

 Finally, Plaintiffs have sought the entry of summary judgment as to the

$7,000.00 obtained by Scotiabank from the sale of North Produce equipment on July 2004. As mentioned earlier, Scotiabank does not dispute that these $7,000.00 are trust assets which are reserved for trust beneficiaries. However, Scotiabank contends that summary judgment awarding the entire amount to Plaintiffs in inappropriate since, by virtue of its participation in bankruptcy proceeding, it became aware that there are potentially other PACA trust beneficiaries with claims to that money (Docket # 32 at p. 10).

Given that it is undisputed that Plaintiffs have a legal right to the $7,000.00 obtained from the sale of North Produce's equipment, we will not deny Plaintiffs their right to collect this money at this juncture based on the information provided by Scotiabank. This information is speculative and lacks specificity as to the parties which may, or may not, have a legal right to a share of the money. Accordingly, Plaintiffs' motion for summary judgment on this claim is **GRANTED.**

### Conclusion

For all the reasons discussed above, Plaintiffs' motion for summary judgment as to the $33,483.00 received by Scotiabank in repayment of the 2001 through 2002 loans and the $7,000.00 obtained from the sale of North Produce equipment is **GRANTED.** Partial Judgment will be entered accordingly. The parties are **ORDERED** to file their Joint Pretrial Memorandum as to the remaining claims by **September 15, 2006. A Pretrial and Settlement Conference will be set for October 24, 2006 at 2:30 p.m.**

**SO ORDERED.**